IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **DERIS DAVIS BAILEY**, *et al.*, | * |
| Plaintiffs, | * |
| v. | *  Civil Case No. SAG-23-1175 |
| **UNITED STATES OF AMERICA**, *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiffs Deris Davis Bailey, individually and as personal representative of the Estate of Andrew Davis, Keith Davis, Andrea Lynn Davis Fuery, and Alicia Davis (collectively "Plaintiffs") filed this wrongful death and survival action against Defendants the United States of America, Walter Belleza, M.D., and University of Maryland Emergency Medical Associates, P.A. ("UMEMA") (collectively "Defendants") alleging that Defendants' medical negligence caused serious injury resulting in the death of Andrew Davis. ECF 1. Defendants Dr. Belleza and UMEMA have filed a motion in limine to preclude the testimony of Plaintiffs' expert witness Dr. Gary Salzman as to emergency physician standard of care, ECF 40. Also pending is a motion in limine to preclude Dr. Salzman's testimony concerning care rendered by Nurse Monica Gale ("Nurse Gale"), ECF 42, and a motion for summary judgment filed by Defendant United States, ECF 43. The Court has reviewed each of these motions, along with the related oppositions. ECF 44, 45, 46. No replies were filed and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons that follow, the motion in limine and motion for summary judgment filed by Defendant United States will be GRANTED. The motion in limine filed by Defendants Dr. Belleza and UMEMA will be DENIED.

I.      **FACTUAL BACKGROUND**

This matter arises from alleged medical negligence in the care and treatment rendered to Plaintiffs' decedent, Mr. Davis, on January 14, 2020 at the Baltimore Veterans Affairs Medical Center ("BVAMC"). ECF 1. On the night of January 13, 2020, Mr. Davis was transported from his long-term care facility to the BVAMC Emergency Room for evaluation and treatment of fatigue, weakness, abdominal pain, and an episode of dark brown emesis. *Id*. ¶ 19. In the BVAMC Emergency Room, Mr. Davis was seen by Dr. Belleza, an emergency medicine physician and employee of UMEMA who works at BVAMC. ECF 42-7 at 6. A CT scan of the abdomen revealed that Mr. Davis had incomplete small bowel obstruction. *Id*. ¶ 20. Placement of a nasogastric ("NG") tube into the stomach was recommended to treat the obstruction and prevent aspiration. *Id*. ¶ 21. Dr. Belleza and others on the medical team attempted to place an NG tube for Mr. Davis several times but were unsuccessful. *See id.*; ECF 42-7 at 38-39.

Subsequently, Nurse Gale, an employee of BVAMC, was able to place the NG tube without incident. ECF 1 ¶ 22. Dr. Belleza performed a preliminary assessment of the NG tube placement via auscultation with a stethoscope and air instillation and concluded that the tube was properly placed. *Id*. ¶ 23; ECF 42-7 at 51-53. Additionally, Dr. Belleza was able to withdraw fluid from Mr. Davis's stomach. ECF 42-7 at 54-55. A portable chest x-ray was ordered and performed, but it was inconclusive regarding placement of the NG tube. *Id*. at 73-74; ECF 1 ¶ 25. Mr. Davis's oxygen saturation deteriorated, he was placed on high-flow oxygen, and a second chest x-ray and CT scan were ordered. ECF 42-7 at 74-75; ECF 1 ¶ 25. The CT scan confirmed that the NG tube was misplaced in Mr. Davis's left lung. ECF 1 ¶ 26. Mr. Davis passed away the day after his arrival at BVAMC from respiratory complications related to a pneumothorax (collapsed lung). *Id*. ¶ 28.

Plaintiffs filed this lawsuit on May 3, 2023, alleging that "Mr. Davis sustained serious injury leading to this death, extreme physical pain and suffering, and pecuniary loss" as a direct result of the Defendants' negligence. ECF 1. Pending now are Defendants' motions to exclude the testimony of Plaintiffs' proffered expert concerning the care rendered by Nurse Gale and Dr. Belleza, ECF 40, 42 and a motion for summary judgment by the United States, ECF 43. This Court will first resolve the *Daubert* motions before turning to the motion for summary judgment.

## II.   *DAUBERT* MOTIONS

### A. Legal Standard

"The admissibility of expert testimony in a federal court sitting in diversity jurisdiction is controlled by federal law." *Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1054 (4th Cir. 1986). Under the Federal Rules of Evidence, a witness may be qualified as an expert "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. To be admissible, Rule 702 requires the proffered expert testimony to be (1) helpful to the jury in understanding the evidence or determining a fact at issue; (2) "based on sufficient facts or data;" (3) "the product of reliable principles and methods;" and (4) the product of a reliable application of those principles and methods to the facts of the case." *Id.*

Additionally, Rule 702 implicitly "imposes a special gatekeeping obligation on the trial judge" to ensure that an expert opinion is both relevant and reliable. *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017); *see also Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 597 (1993). In *Kumho Tire Co. v. Carmichael*, the Supreme Court explictly extended this responsibility to expert opinions outside of the scientific realm. *See* 526 U.S. 137, 141-42 (1999). As to the first aspect of this gatekeeping role, generally, expert testimony is relevant if the expert's opinion

relates to some issue in the case. *See Daubert*, 509 U.S. at 591. It requires some valid connection between the expert's opinion and the pertinent inquiry at hand. *See id.* at 592.

The Court's inquiry into the reliability of an expert's testimony is "flexible," and focuses on "the principles and methodology employed by the expert." *Id.* at 594-95; *see also Kumho Tire Co.*, 526 U.S. at 141 (noting that *Daubert*'s enumerated factors for reliability is "neither necessarily nor exclusively applies to all experts or in every case"). In determining whether proferred testimony is sufficiently reliable, "the court has broad latitude to consider whatever factors bearing on validity the court finds to be useful; the particular factors will depend on the unique circumstances of the expert testimony involved." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999); *see also Nease*, 848 F.3d at 230. Neither *Daubert* nor the Federal Rules of Evidence obligate a trial court "to admit opinion evidence that is [based merely on] the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997). Rather, "[r]eliability is to be determined by the 'principles and methodology' employed by the expert." *Holesapple v. Barrett*, 5 F. App'x 177, 179 (4th Cir. 2001). Indeed, "[t]he Court must exclude expert testimony if it is so fundamentally unreliable that it can offer no assistance to the jury." *Goyal v. Thermage, Inc.*, Civil No. WDQ-08-0020, 2011 WL 691185, at *3 n.8 (D. Md. Feb. 18, 2011) (quoting *Meterlogic, Inc. v. KLT, Inc.*, 368 F.3d 1017, 1019 (8th Cir. 2004)).

### B. Motion to Preclude Dr. Salzman from Offering Testimony as to Care Rendered by Nurse Gale

Plaintiffs bring this action against the United States under the Federal Tort Claims Act ("FTCA"), due, in part, to the alleged negligent acts of Nurse Gale. ECF 1 ¶¶ 8-9; *see United States v. Orleans*, 425 U.S. 807, 813 (1976) (The FTCA "is a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of

4

federal employees acting within the scope of their employment."). Plaintiffs allege that Nurse Gale and other health care providers breached the standard of care and caused Mr. Davis's death by

> failing to properly treat Mr. Davis; failing to properly place Mr. Davis' NG tube; failing to timely and properly recognize that the NG tube was misplaced; failing to properly supervise nursing care rendered to Mr. Davis; failing to properly supervise placement of the NG tube; negligently causing Mr. Davis' pneumothorax; failing to properly and timely diagnose Mr. Davis' pneumothorax; failing to timely intervene and treat Mr. Davis' pneumothorax; by failing to render appropriate care within the standard of care to Mr. Davis; and by otherwise failing to take steps to avoid injury to Mr. Davis.

ECF 1 ¶ 34.

Plaintiffs retained Sarah Jordan, BSN, RN, WCC, CDP, CGCP ("Ms. Jordan"), presumably as their RN expert. *See* ECF 42-2 at 3-4. However, during Ms. Jordan's deposition testimony, she stated that she was not offering any opinion as to the standard of care or causation with respect to any of the providers in this case, including Nurse Gale. ECF 42-3 at 5 ("Q: So your role in this case…was to provide a medical chronology? A: …exactly. Just explaining what I read and what I identified in the records…Q: But you're not providing any opinion whatsoever about anything you read in the records? A: I'm providing no opinion, no causation, no standard of care."). Plaintiffs therefore rely solely on the testimony of their other proffered expert, Dr. Salzman, in support of their claims against all Defendants. *See* ECF 42-2.

Defendant United States moves to exclude the testimony of Dr. Salzman as to the actions of Nurse Gale.[1] ECF 42. Specifically, the United States contends that, as a critical care physician, Dr. Salzman is not qualifed "by the necessary experience or training to offer expert opinions in this case as to the standard of care, breach, or medical causation of a licensed registered nurse." ECF 42-1 at 2. Defendant also argues that Dr. Salzman's expert report and deposition testimony

---

[1] While both Nurse Gale and Dr. Belleza worked at BVAMC, the United States only employed Nurse Gale. Dr. Belleza worked as an employee of UMEMA.

are insufficient under Federal Rule of Evidence 702 and Federal Rule of Civil Procedure 26(a)(2)(B). This Court grants the motion on both grounds.

### i. Maryland Substantive Medical Malpractice Law

Maryland's Healthcare Malpractice Claims Act (the "Act") establishes the qualifications required of a health care provider proffered to testify concerning a defendant's compliance with, or departure from, the applicable standard of care. *See* Md. Code (1974, 2020 Repl. Vol.), §3-2A-02(c)(2)(ii)(1)(B), *Courts & Judicial Proceedings Article* ("CJP").[2] The Act requires a plaintiff seeking to recover for injuries caused by medical malpractice to provide by a preponderance of the evidence "(1) the applicable standard of care; (2) that this standard has been breached; and (3) a causal relationship between the violation and the injury." *Harris-Reese v. United States*, 615 F. Supp. 3d 336, 367 (D. Md. 2022) (citation omitted). Experts are usually necessary to establish the standard of care for professionals who have special training and expertise, like doctors and nurses, as well as the breach of that standard and causation. *Green v. Obsu*, No. ELH-19-2068, 2022 WL 2971950, at *20 (D. Md. July 27, 2022).

As to the standard of care, a professional with specialized training must "use that degree of care and skill which is expected of reasonably competent practitioner in the same class to which [the professional] belongs, acting in the same or similar circumstances." *Id*. (citation omitted). Additionally, the Act requires that a qualified expert testifying as to the defendant's compliance with or departure from the applicable standard of care must "have had clinical experience, provided consultation relating to clinical practice, or taught medicine in the defendant's specialty or a related

---

[2] Under the FTCA, "liability of the United States is determined by the law of the place where the act or omission occurred.'" *Kerstetter v. United States*, 57 F.3d 362, 366 (4th Cir. 1995) (citations omitted). Since Plaintiffs' claims are based on events that took place in Maryland, the substantive law of Maryland applies. *Id*.

field of health care, or in the field of health care in which the defendant provided care or treatment to the plaintiff, within 5 years of the date of the alleged act or omission giving rise to the cause of action," and must be "board certified in the same or related specialty as the defendant" if the defendant is board certified in a specialty. CJP, §3-2A-02(c)(2)(ii)(1)(A), (B). Under Act, specialities and fields of health care are "related" if "there is an overlap in treatment or procedures within the specialities and therefore an overlap of knowledge... among those experienced in the fields or practicing in the specialties, and the treatment or procedure in which the overlap exists is at issue in the case." *Hinebaugh v. Garrett Ctny. Mem. Hosp.*, 51 A.3d 673, 683 (Md. Ct. Spec. App. 2012).

Defendant United States argues that Dr. Salzman is not qualifed to testify as an expert regarding the standard of care, breach of that standard, or medical causation as applied to Nurse Gale's conduct in this matter because their specialties are not "related" under the Act. ECF 42-1. This Court agrees.

Dr. Salzman is a medical doctor who completed his Internal Medicine residency in 1983 and Pulmonary Critical Care Fellowship in 1985. ECF 40-5 at 1-2. He is board certified in Internal Medicine, Pulmonary Disease, and Critical Care Medicine. *Id*. at 2; ECF 42-8 at 5. Unlike Nurse Gale, Dr. Salzman is not licensed in nursing and has never served as a licensed RN. ECF 40-5. Dr. Salzman does not work in the emergency department and does not supervise nurses in the emergency department setting. ECF 42-8 at 19, 5-7. And Dr. Salzman testified that a nurse's role is to follow the orders of the supervising doctor, indicating that each play distinct roles in patient care. ECF 42-8 at 21; *see also Chaplin v. Univ. of Maryland Med. Sys. Corp.*, 2019 WL 5488457 at *3 (Md. Ct. Spec. App. Oct. 25, 2019) (finding no overlap between transplant coordinator nurse and transplant surgeon because nurses "act pursuant to instructions given by surgeons"). Thus, as

a critical care physician, Dr. Salzman's specialty does not "overlap" in treatment, procedures, or knowledge with that of an emergency department nurse such as Nurse Gale enough to qualify as a "related field of health care" under the Act. *See* CJP, §3-2A-02(c)(2)(ii)(1)(A); *Hinebaugh*, 51 A.3d at 686. Under Maryland law, Dr. Salzman cannot opine as to the standard of care governing Nurse Gale's actions in this case.

### ii. Federal Procedural Law

Dr. Salzman's opinions as to the care rendered by Nurse Gale are also insufficient under Federal Rule of Civil Procedure 26(a)(2)(B) and Federal Rule of Evidence 702. Rule 26(a)(2(B) sets forth the requirements for experts who must provide a written report, including that the report contain "a complete statement of all opinions the witness will express and the basis and reasons for them" along with "the facts or data considered by the witness in forming them." *Id*. (a)(2)(B)(i), (ii). Here Dr. Salzman's two-page report fails to provide "the basis and reasons" for his opinions regarding the specific actions of Nurse Gale. Instead, the report generally states that, "Dr. Belleza, [Nurse Gale], and the Medicine Team…violated the standard of care by repeatedly trying to insert an NG tube multiple times in a patient with a history of esophagaeal stricture." ECF 42-5 at 3. The record reflects that Nurse Gale knew of only one previous attempt to insert the NG tube, subsequently made only one attempt (which was successful), and was not aware of Mr. Davis's history of esphogeal stricture. *See* ECF 42-6 at 20. Dr. Salzman's report lacks any description of how he reached his opinion as it relates specifically to Nurse Gale's actions or the facts or data he considered in reaching his opinion. *See Cohlmia v. Ardent Health Servs., LLC*, 254 F.R.D. 426, 432 (N.D. Okla. 2008) (expert reports were insufficient under Rule 26 because they did not "set forth the expected testimony of the experts as to how and why they reached their opinions"). Dr. Salzman's report thus does not meet the requirements of Rule 26.

Dr. Salzman's opinions as to Nurse Gale are also inadmissible under Federal Rule of Evidence 702. He opines that the standard of care required the "health care providers" in this case to proceed with one of three "acceptable" options after an initial attempt at NG tube placement in Mr. Davis was unsuccessful: "(1) treat the incomplete small bowel obstruction with NPO and bowel rest without an NG tube, (2) consult a radiologist to place the tube under fluroscopy imaging, or (3) consult gastroenterology to place the tube under direct visualization with upper endoscopy." ECF 42-5 at 3. None of these treatment decisions would be made by an emergency department nurse like Nurse Gale. While Dr. Salzman alleges that Nurse Gale has breached the standard of care, his report and opinions make no reference to the standard of care pertaining specifically to nurses. Dr. Salzman's opinions as to Nurse Gale must be excluded because they would not assist the trier of fact in determining whether Nurse Gale breached the applicable standard of care. *See Honey-Love v. United States*, 664 F. App'x 358 360-61 (5th Cir. 2016) (differentiating between the standard of care applicable to doctors and that applicable to nurses and excluding expert's testimony for failing address the requisite standard).

Dr. Salzman is therefore precluded from offering expert testimony in this matter as to the care rendered by Nurse Gale.

### C. Motion to Preclude Dr. Salzman from Offering Testimony as to Emergency Physician Standard of Care

Plaintiffs allege that Dr. Belleza breached the standard of care in failing to properly treat Mr. Davis and have also retained Dr. Salzman to provide standard of care and causation opinions in support of that claim. ECF 1 ¶ 34; ECF 35. Defendants Dr. Belleza and UMEMA allege that as a pulmonary and critical care specialist, Dr. Salzman is not qualified to render standard of care testimony as to Dr. Belleza, an emergency room physician, and Dr. Salzman's testimony must be excluded under the Act. ECF 40. Specifically, Defendants contend that because Dr. Salzman is not

9

board certified in the same or related specialty as that of Dr. Belleza, Dr. Salzman should be precluded from offering any standard of care testimony as to Dr. Belleza's actions. *Id*. Defendants also argue that Dr. Salzman does not routinely place NG tubes, has never attempted placement of an NG tube in a patient with an esphogeal stricture, and has never been called to the emergency department to place an NG tube. ECF 40-1 at 14-15. As such, Defendants contend, Dr. Salzman is "not sufficiently familiar with the standard of care for an emergency physician with regard to the placement of an NG tube in an emergency room setting (particularly for a patient who may have an esphogeal stricture) to offer standard of care criticisms against Dr. Belleza." *Id*. at 15.

In support of these arguments, Defendants rely on two Maryland appellate court cases addressing the concept of "related specialty" under the Act. In *Street v. Upper Chesapeake Medical Center, Inc.*, 311 A.3d 321 (Md. Ct. App. 2024), the appellate court reviewed the trial court's *in limine* ruling precluding plaintiff's board certified vascular surgery expert from testifying that the defendant emergency room physician had breached the standard of care by failing to arrange for a consultation by a vascular surgeon. *Id*. at 335. Exploring Maryland case law on the meaning of "related specialty" under the Act, the *Street* court noted that "whether specialities are related depends upon the circumstances of the case and in particular upon whether there is treatment overlap between the specialties." *Id*. at 332. The court found that "overlap and symmetry in treatment" was lacking because the expert vascular surgeon "sees patients already thought to have vascular disease, not patients presenting for an initial assessment of their symptoms." *Id*. at 335. As such, the court upheld the trial court's ruling that the vascular surgeon was not board certified in a specialty "related to" that of the defendant emergency room physician under the Act. *Id*.

Defendants also rely on *Hinebaugh v. Garrett County Memorial Hospital*, 51 A.3d 673 (Md. Ct. Spec. App. 2012). In that case, the court of appeals found that the plaintiff's expert, a

dentist board certified in oral and maxillofacial surgery ("OMS"), was not in a specialty "related" to any of the defendant doctors, one board certified in family medicine and two board certified in radiology, and thus could not testify as to their standard of care. After being hit in the face, the plaintiff was evaluated by the defendant family medicine physician, who ordered x-rays to determine whether the plaintiff had facial fractures. *Id*. at 687. The defendant radiologists performed and read the x-rays, concluding they showed no bone fractures in plaintiff's face. *Id*. The plaintiff's OMS expert opined that all three defendants breached the standard of care by failing to perform a CT scan of plaintiff's face after the simple x-rays did not show any broken bones. *Id*. at 687-88. Analyzing the OMS expert's affidavit, the appellate court found that the OMS expert focused solely on "explaining the standard of care that govern OMS dentists" who are called in as consultants and not the standards that apply "to family medicine doctors or radiologists confronted with a patient who complains of pain as a result of being hit in the face." *Id*. at 688. The court found that the OMS expert did not "opine that the standard of care for either family medicine doctors or radiologists overlaps that of an OMS specialist." *Id*. Noting that the "relatedness" of the specialties is assessed according to the context of the case, the court concluded that, unlike family medicine and radiology doctors, "OMS dentists are not front line health care providers" and did not stand on "equal footing with respect to the diagnosis and treatment of facial fractures in front line patients." *Id*. at 689.

      Here, the Court must determine whether, under the Act, the subject matter of Dr. Salzman's specialties, internal medicine and pulmonary and criticial care, overlap sufficiently with Dr. Belleza's specialty in emergency medicine with respect to the treatment of Mr. Davis, a patient with a history of espheageal stricture who required NG tube placement in the emergency room setting. In analyzing the "relatedness" of these specialties, this Court focuses on whether they share

the ability to address the medical need at issue and finds *Nance v. Gordon*, 62 A3d 185 (Md. Ct. Spec. App. 2013), instructive. In *Nance*, the court concluded that nephrology and urology were "related specialties" because "the treatment rendered (a differential diagnosis at the time the patient presents to the emergency room)" was performed by both specialties. *Id*. at 194. The court relied on the fact that the expert, a board certified nephrologist, "personally participated in the same kinds of 'on-call services for emergency departments' as the treatment [the plaintiff] received" from the defendant urologists, to find that the expert was a "front line health care provider" like the defendants and thus could testify as to the applicable standard of care. *Id*.

Here, Dr. Salzman testified that he sees, manages, and consults on patients in the emergency department for issues related to pulmonary and critical care and internal medicine. ECF 42-8 at 5. Thus, like Dr. Belleza and the nephrologist expert in *Nance* (and unlike the vascular surgeon in *Street* and the OMS dentist in *Hinebaugh*), Dr. Salzman is actively involved in treating emergency room patients and is a "front line health provider." *See Nance*, 62 A.3d at 194; *Hinebaugh*, 51 A.3d at 689-90.

Defendants have not argued that the standard of care for placement and management of an NG tube for a patient in the emergency department differs from that for a patient in the critical care or intensive care unit. Instead, Defendants incorrectly focus on Dr. Salzman's lack of training and certification in emergency medicine, failing to recognize that treatment rendered to Mr. Davis falls within the overlapping expertise of emergency medicine and pulmonary and critical care, rendering Dr. Salzman's expertise pertinent to the treatment and procedure at issue. *See Hinebaugh*, 51 A.3d at 21 (finding that the Act "does not require that the expert and the defendant be the same kind of health care provider"). Dr. Salzman is well versed in pulmonary complications related to the placement of an NG tube, particularly as they relate to the circumstances in this case

where the tube was incorrectly placed in the patient's lung, recognition of the incorrect placement was delayed, and the patient clinically deteriorated and later died as a result. *See* ECF 42-8 at 10-12, 20. Dr. Salzman has published a medical article discussing such pulmonary complications relating to tube placement and has managed the placement of NG tubes for patients at risk of complications. *See* ECF 44-2; ECF 42-8 at 4, 19; *Nance*, 62 A.3d at 195. Plaintiffs have established an overlap in knowledge and treatment between the specialties of emergency medicine and internal medicine and pulmonary and critical care as it relates to placement and management of an NG tube. *See Nance*, 62 A.3d at 196 ("the procedure at issue in the instant case…is one both healthcare providers have experience with" (citation omitted)). Based on the record, the Court concludes that Dr. Salzman can offer testimony regarding the standard of care as it relates to the actions of Dr. Belleza in this case.

### III.   MOTION FOR SUMMARY JUDGMENT

Defendant United States moves for summary judgment, contending that Plaintiffs are unable to establish the elements of their medical malpractice claim. Specifically, the United States argues that without an expert to opine on the care rendered by Nurse Gale, Plaintiffs cannot establish a prima facie case of medical negligence against the United States. This Court agrees.

As noted above, Maryland law requires that a medical malpractice plaintiff prove three elements by a preponderance of the evidence: "(1) the applicable standard of care; (2) that this standard has been breached; and (3) a causal relationship between the violation and the injury." *Ford v. United States*, 165 F. Supp. 3d 400, 422 (D. Md. 2016). In cases involving professional negligence, expert testimony is ordinarily required to establish the standard of care, breach of that standard, and causation because such standards require specialized knowledge within the

professional's field that are generally "beyond the ken of the average layman." *Green*, 2022 WL 2971950, at *20 (citation omitted).

Because Plaintiffs bear the burden of establishing the elements of their medical malpractice as to Nurse Gale, the exclusion of Dr. Salzman's expert testimony as to the care rendered by Nurse Gale is fatal to Plaintiffs' malpractice claims against the United States. Courts have found that summary judgment is appropriate where there is an absence of evidence to support the non-moving party's case. *See id.* at *24; *Rodriguez v. Clarke*, 926 A.2d 736, 755, 348 (Md. Ct. App. 2007) (If expert testimony regarding negligence and causation is lacking, "the court may rule…that there is not sufficient evidence to go [to] the jury." (citation omitted)); *Honey-Love*, 664 F. App'x at 363 (upholding summary judgment where expert report was excluded); *Williams v. Mosaic Fertilizer, LLC*, No. 8:14-cv-1748, 2016 WL 7175657, at *17 (M.D. Fla. June 24, 2016) (granting summary judgment when plaintiff's expert was excluded from testifying). Defendant United States is entitled to summary judgment because Plaintiffs have failed to proffer expert testimony establishing the standard of care, breach, and causation related to the conduct of Nurse Gale.

## IV.     CONCLUSION

For the reasons set forth above, the United States's motion in limine, ECF 42, and motion for summary judgment, ECF 43 are GRANTED. Judgment is entered in favor of the United States on all claims. The motion in limine by Defendants Dr. Belleza and UMEMA to preclude Dr. Salzman from offering testimony concerning the care rendered by Dr. Belleza, ECF 40, is DENIED. A separate Order follows.

Dated:  August 11, 2025                                                     /s/
                                                                Stephanie A. Gallagher
                                                                United States District Judge

14